■ In the Matter of the Estate of ROBERT J. WILSON, Deceased. OSCEOLA TURNER, Respondent; EARLENE WILSON, Appellant.—In a proceeding to determine the validity of an election by Earlene Wilson (Earlene), the surviving spouse, to take her statutory share against the provisions of the last will and testament of Robert J. Wilson, deceased, the said surviving spouse appeals from an order of the Surrogate's Court, Suffolk County, entered October 17, 1977, which, after a nonjury trial, denied her a right of election. Order reversed, on the law and the facts, with costs to appellant payable out of the estate, and appellant's right of election is determined to be valid. The record does not support the finding of the Surrogate that the testimony of the witnesses for Earlene appeared to be rehearsed and therefore unworthy of belief. The evidence adduced supports the conclusion that the Wilsons were not physically separated at the time the separation agreement was executed; nor did they ever separate thereafter. Illustrative of this is the significant fact that in September, 1968, slightly more than two years after the date of the separation agreement (August 2, 1966), Robert and Earlene Wilson successfully petitioned the Surrogate's Court (as husband and wife) to adopt as their son Clifford Elvis Wilson, the administrator *c. t. a.* and residuary devisee (and legatee) under the last will and testament at issue. The law is well settled that a contract for the future separation of a husband and wife is against public policy and is thus unenforceable. In

order for such an agreement to be valid the parties must have actually separated before making the agreement or the separation must immediately follow its execution. *(Matter of Dail,* 29 Misc 2d 809, affd 14 AD2d 850; *Whedon v Whedon,* 247 App Div 463.)* Here, since the agreement was void, its provisions never took effect. Accordingly, we hold that the election filed by Earlene is valid and subsisting. In our view the cases cited in the dissenting memorandum are inapposite to the issue at bar. Gulotta, Shapiro and Cohalan, JJ., concur.

Suozzi, J., dissents and votes to affirm the order, with the following memorandum, in which Latham, J. P., concurs: In my view, appellant's waiver of her right of election, which is contained in a separation agreement executed by the appellant and her husband, the decedent, is valid. The facts surrounding the execution of the waiver of her right of election are not in dispute. Appellant and her husband were married on June 22, 1959. On August 2, 1966 the appellant and her husband entered into a written separation agreement which provided for a division of their real and personal property and also provided for a waiver of their respective rights to the other's estate. The agreement further provided that any modification of any provision in the agreement would have to be in writing and executed with the same formality as the original agreement. On December 30, 1969 the decedent executed a will which made no provision for his wife, the appellant herein. Appellant filed and recorded a notice of election to take against the will. A nonjury trial was held before the Surrogate, who heard testimony concerning the relationship between the decedent and his wife subsequent to the execution of the separation agreement. After hearing the testimony, the Surrogate held that the appellant had not met her burden of establishing that she and her husband had reconciled and that the separation agreement and the waiver of the right to elect against the will contained therein was valid, and that the appellant could not elect against the will. In reversing the order of the Surrogate and holding that the right of election filed by the appellant is valid, the majority is of the view, contrary to that adopted by the Surrogate, that the evidence clearly supports the conclusion that the parties were not separated at the time the separation agreement was executed, nor did they separate thereafter. Accordingly, the purported separation agreement was a contract for the future separation of husband and wife, which is void as against public policy and thus unenforceable *(Matter of Dail,* 29 Misc 2d 809, affd 14 AD2d 850; *Whedon v Whedon,* 247 App Div 463; see former section 51 of the Domestic Relations Law, now section 5-311 of the General Obligations Law). According to the majority, since the agreement was void, all of its provisions, including the waiver of the right of election, never took effect and the right of election filed by appellant is valid. In my view the evidence adduced at the hearing supports the finding of the Surrogate, as the trier of the facts, that the parties separated and never reconciled; that finding should not be disturbed. Even assuming, *arguendo,* that the majority is correct in finding that the evidence indicates that the parties never separated, either before or after the execution of the separation agreement, it does not follow that the waiver of the right of election is also invalid. Indeed, the law is to the contrary, i.e., the waiver remains valid. Initially, it should be noted that there is no question that the waiver complied with the requirements of EPTL 5-1.1 (subd [f], pars [2], [3], formerly Decedent Estate Law, § 18, subd 9). The record further indicates that the agreement was implemented and performed insofar as the distribution of the property is concerned. In *Matter of Falanga* (29 AD2d 169, affd 23 NY2d 860), a separation decree was

granted and an oral waiver of the parties' respective rights of election by stipulation was made in open court. In considering the effect of a subsequent reconciliation between the parties upon the waiver, the court held that the reconciliation did not, *ipso facto,* serve to nullify the waiver. The court stated (p 171): "The separation of the spouses and their subsequent reconciliation are neutral factors as to such a waiver. The waiver subsists unless expressly terminated." In *Stahl v Stahl* (16 AD2d 467), Special Term found that the contract was one to alter or dissolve a marriage in contravention of former section 51 of the Domestic Relations Law and held that the mutual waivers by both spouses to share in the estate of the other which were contained in the agreement were void. The Appellate Division reversed and held that these waivers, which were "unrelated to the continued existence of the marriage and for support" *(Stahl v Stahl, supra,* p 468), were valid. In so holding, the court stated (pp 468-469): "It is well settled that agreements which may not be enforced because they contravene this statute may still contain releases or waivers which are enforcible *(Hoops v. Hoops,* 266 App. Div. 512; *Schiff v. Schiff,* 270 App. Div. 845; *Dworkin v. Dworkin,* 247 App. Div. 213). While in all of these cases the agreement violated that part of the statute which prohibits a husband from contracting to relieve himself of support, the rule would apply with equal effect where the bar of the statute applies because the agreement is one to alter the marriage status, namely, to separate." (See, also, *Matter of Frisch,* 49 Misc 2d 898.) In *Matter of Fraize* (14 Misc 2d 175, 177), the court stated: "As to the question of consideration, I am of the opinion that in the instant case the widow did receive consideration at the time of execution of the agreement; however, even if she did not, subdivision 9 (par. [d]) of section 18 of the Decedent Estate Law provides that a waiver or release of right of election shall be effective whether executed with or without consideration. And said subdivision 9 (par. [c]) further provides that such a waiver or release may even be unilateral in form and executed only by the maker thereof. Concerning the allegation that the agreement is against public policy pursuant to section 51 of the Domestic Relations Law due to the fact it purports to relieve the husband from his liability to support the wife, it is well settled that while such a provision does violate section 51, it does not, nevertheless, vitiate the entire agreement and the other provisions of the agreement may be valid and enforcible. *(Schiff v. Schiff,* 270 App. Div. 845; *Matter of Brenner,* 44 N. Y. S 2d 447, affd. 268 App. Div. 1001; *Matter of Lee,* 6 Misc 2d 799.)" In conclusion it is clear, under these authorities, that the wife's waiver of her right of election was valid and that she cannot elect against her deceased husband's will. Accordingly, the order appealed from should be affirmed.